# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

BRIAN SMITH, et al.,

        Plaintiffs,

v.                               CIVIL ACTION NO. 2:18-cv-00950

ROANE COUNTY COMMISSION, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions to Dismiss or, in the Alternative, Summary Judgment filed separately by the Roane County Commission ("the Commission"), Commissioners Merlin Shamblin, Melissa O'Brien, and Randy Whited (collectively the "Commissioners") and the Roane County Commission d/b/a Roane County Sheriff's Department (the "Sheriff's Department"), (ECF No. 6), and Sheriff Todd Cole, Chief Deputy Matt Cooper, and Lieutenant Jeff Smith (collectively the "Officers"), (ECF No. 8). For the reasons discussed herein, the Court **GRANTS** the motions.

## I. BACKGROUND

Tina Smith brings this action on behalf of her incarcerated son, Plaintiff Brian Smith ("Plaintiff"). The following facts are drawn from the Complaint and, for purposes of resolving the motions, are assumed to be true.

On May 26, 2016, Plaintiff was transported from the Central Regional Jail to the Roane County Courthouse in Spencer, West Virginia, for arraignment. (ECF No. 1 at 4, ¶¶ 9, 10.) While

awaiting his proceeding, Plaintiff was shackled at the wrists and ankles and placed in a holding cell with unrestrained prisoners. (*Id.* ¶ 10.) "Plaintiff expressed his concern for his safety" to the Officers, but his concerns were "ignored" and he was "removed to the courtroom for arraignment." (*Id.*) Following his arraignment, Plaintiff remained shackled and returned to the holding cell with unrestrained prisoners. (*Id.* ¶ 11.) The unshackled prisoners, "encouraged by explicit or implicit coercion by Defendants' inaction and lack of supervision", then physically assaulted Plaintiff. (*Id.*) Upon discovering his injuries, an officer immediately transported Plaintiff to the Roane General Hospital. (*Id.* ¶¶ 11, 13.) As a result, Plaintiff suffered severe bodily injury and emotional damage. (*Id.* ¶¶ 12, 13.)

Based on these allegations, Plaintiff asserts both state and federal claims for relief. As to the state law claims, Plaintiff asserts the following: tort violations guaranteed under Article III, Sections 1, 5, 6, 10, and 14 of the West Virginia Constitution against all defendants; negligent training and supervision against all defendants; punitive damages against all defendants; battery against the Officers; and intentional infliction of emotional distress against all defendants. (*Id.* at 5–8, ¶¶ 14–33.) Plaintiff also asserts a federal claim under 42 U.S.C. § 1983 against all defendants for failure to protect his safety in violation of the Fourth and Fourteenth Amendment of the United States Constitution. (*Id.* at 8–9, ¶¶ 34–36.)

Defendants filed two separate motions to dismiss on July 16, 2018. (ECF Nos. 6, 8.) On August 13, 2018, Plaintiff filed responses to defendants' motions.[1] (ECF Nos. 15, 16.) Defendants filed replies on August 28, 2018. As such, the motions are fully briefed and ripe for adjudication.

---

[1] The Court previously granted the parties' joint motions to extend the briefing deadlines associated with the pending motions. (*See* ECF Nos. 13, 18.) In accordance with these orders, the responses and replies are timely and in compliance with Local Rule of Civil Procedure 7.1(a)(7).

## II. LEGAL STANDARD[2]

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

---

[2] Defendants have submitted video footage of the holding cell on the day in question and request that the Court consider its contents, which defendants allege contradicts Plaintiff's version of events as alleged in the Complaint. (ECF No. 9 at 19–20.) While the Court may convert a motion to dismiss into one for summary judgment to consider matters outside the pleadings, *see* Fed. R. Civ. P. 12(d), the Court declines to consider the video recording at this stage in the litigation to avoid any unfair surprise or prejudice to Plaintiff. As such, the video recording is excluded and the pending motions will be construed only as Rule 12(b) motions to dismiss.

In evaluating the sufficiency of a complaint, the Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id*. "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III. DISCUSSION

### A. Section 1983 Claim

Section 1983 is not itself the source of any substantive rights. Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "A federal civil rights claim based upon § 1983 has two essential elements: 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In this case, Plaintiff's § 1983 claim alleges that the defendants failed to protect and provide for his safety in violation of the Fourth and Fourteenth Amendments. (ECF No. 1 at 8–9 ¶ 35.) The Supreme Court has long recognized that "prison officials have a duty . . . to protect prisoners

4

from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988), *cert. denied*, 488 U.S. 823 (1988)). Plaintiff, however, was a pretrial detainee at the time his claims arose, and although he invokes the Fourth Amendment, it is well-established that "the Fourth Amendment does not govern the treatment of pre-trial detainees." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 n.10 (4th Cir. 2004) (citing *Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997) (*en banc*)). Instead, the treatment of pre-trial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment. *See Ervin v. Mangum*, 127 F.3d 1099, 1997 WL 664606, at *4 (4th Cir. Oct. 27, 1997) ("[D]ue process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983))); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992) (noting that courts "do not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim.").

With respect to a failure to protect claim under the Fourteenth Amendment, a prisoner must establish (1) that he suffered significant injury or was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the prison official at issue had a "sufficiently culpable state of mind." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834). Under the first prong—*i.e.*, the objective inquiry, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions," *id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)). The second showing is subjective and requires proof of deliberate indifference.

5

*See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) ("In order to prevail on a claim of failure to protect from violence, [a plaintiff] must establish that [the defendants] exhibited deliberate or callous indifference to a specific known risk of harm."). "In cases where the government is accused of failing to protect a detainee from a substantial risk of physical harm, 'conduct that amounts to deliberate indifference . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim.'" *Parrish*, 372 F.3d at 302 (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001)).

Here, the Complaint alleges that Plaintiff was brutally assaulted by other inmates, and the resulting injuries to Plaintiff's head and spine caused him to suffer from dizziness, blurred vision, headaches, and neck pain. (ECF No. 1 at 4–5, ¶¶ 11, 13.) The Court finds that these allegations satisfy the objective prong of a failure to protect claim. The Court, therefore, will address whether the Complaint sufficiently alleges deliberate indifference on the part of each defendant alleged to be responsible for Plaintiff's injury.

   a. *Officers Cole, Cooper, and Smith*

Officers Cole, Cooper, and Smith principally argue that the Complaint fails to allege a "series of facts" or an "incident or transgression" to give rise to "deliberate indifference" to a "specific" substantial risk of harm to Plaintiff. (ECF No. 9 at 18–19.) In response, Plaintiff contends that additional discovery is required to determine the Officers' state of mind. The Court cannot agree and finds that the Complaint falls short of alleging deliberate indifference on the part of the Officers.

Deliberate indifference is a subjective standard, "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer*, 511 U.S. at 836. To state a claim for deliberate indifference, a plaintiff must establish that an official "knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("[D]eliberate indifference, at a minimum, implies that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). Knowledge of a substantial risk of danger may be inferred "from the very fact that the risk was obvious." 511 U.S. at 842–43 (noting that if "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient" to establish "actual knowledge of the risk.") (internal quotations omitted). *See also Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] *did* know of it because he could not have failed to know of it.").

Plaintiff appears to suggest, without expressly stating, that the circumstances of his confinement posed an obvious, substantial risk to his safety from which knowledge can be inferred. (ECF No. 16 at 12.) The Supreme Court considered the question of whether knowledge can be inferred from an obvious risk of danger in *Farmer v. Brennan.* There, the petitioner was a preoperative transsexual, incarcerated with males in the federal prison system. 511 U.S. at 828. Though biologically male, the petitioner wore women's clothing, "underwent estrogen therapy, received silicone breast implants, and submitted to unsuccessful 'black market' testicle-removal surgery." *Id.* at 829. When transferred by prison officials from a high security correctional

7

institute to the penitentiary's general population, the petitioner was beaten and raped by another inmate in his cell. *Id.* at 830.

The petitioner brought a failure to protect claim against the prison officials on the basis that the officials placed him in the prison's general population "despite knowledge that the penitentiary had a violent environment and a history of inmate assaults, and . . . that petitioner, as a transsexual who 'projects feminine characteristics,' would be particularly vulnerable to sexual attacks" by other inmates. *Id.* at 830–31. The Court recognized that the circumstances posed an obvious risk of danger to the petitioner from which knowledge can be inferred. However, the Court stated that an inference is not conclusive of deliberate indifference and, ultimately, remanded the case for further proceedings. *Id.* at 842–44.

Unlike in *Farmer*, Plaintiff, here, fails to allege facts to suggest that he was subjected to an obvious risk from which an inference of knowledge on part of the Officers can be drawn. The Complaint alleges that Plaintiff was "a special class inmate" and "expressed his concern for his safety to Defendants." (ECF No. 1 at 4 ¶¶ 10, 11.) However, Plaintiff does not allege any facts to support his assertion that he was a "special class inmate," why he was entitled to special protection, or that these Officers were "exposed to information" regarding his alleged special status such that they were placed on notice of any alleged increased risk of harm to Plaintiff. *Farmer*, 511 U.S. at 842. Further, though Plaintiff generally "expressed concern for his safety" on the basis that he was shackled and placed in the same cell as unrestrained inmates, he does not allege facts to suggest that these conditions presented an increased risk of inmate-on-inmate violence that was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Id.*

Plaintiff's conclusive assertion that "[n]o objectively reasonable [officer], would have believed . . . that the defendants [sic] failure to segregate, guard and protect the safety of plaintiff

as a shackled person and with the information known to others who were not shackled in the holding cell . . . was reasonable and in good faith", (ECF No. 1 at 8–9 ¶ 35), insufficiently pleads a risk known to and disregarded by the Officers. *Farmer*, 511 U.S. at 843 n.8 (emphasizing that "[i]t is not enough merely to find that a reasonable person would have known, or that the defendant should have known" of a risk to inmate safety under the deliberate indifference standard). Reading the Complaint in the light most favorable to the Plaintiff, the well-pleaded facts simply establish that Plaintiff was restrained and placed in a holding cell with unrestrained inmates, attacked by inmates, immediately removed from the cell, and transported to a hospital. The Complaint is devoid of any facts demonstrating these Officers disregarded a known substantial risk to Plaintiff's safety.

While the Complaint alleges that the Officer should have known about the potential risk of danger by placing a shackled inmate in the same cell as unshackled inmates, these bare allegations at most sound in negligence but cannot plausibly support a finding of deliberate indifference. Even if the allegations support an inference that the Officers were negligent in some unidentified way, "[n]egligence . . . is insufficient to support a claim of a Fourteenth Amendment violation." *Young*, 238 F.3d at 577 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) and *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). *See also Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (noting that a "claim, based on respondents' negligence, is quite different from one involving injuries caused by an unjustified attack by prison guards themselves or by another prisoner where officials simply stood by and permitted the attack to proceed") (internal citation omitted).

Accordingly, as the allegations "do not permit the [C]ourt to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, Plaintiff's failure to protect claim against the Officers must be dismissed.

### b. The Commission, Individual Commissioners, and Sheriff's Department

With regard to his § 1983 claim, Plaintiff does not assert personal involvement on the part of the Commission, Commissioners, and the Sheriff's Department. Instead, Plaintiff attempts to establish municipal liability for these defendants' failure to adequately train employees responsible for Plaintiff's safety. (ECF No. 15 at 13–15.) Indeed, a municipality may be liable for constitutional violations of its employees under § 1983 where "the execution of a policy or custom . . . caused the violation." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). *See also Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (noting that "a municipality cannot be held liable solely because it employs a tortfeasor").

In order to state a claim against a municipality under § 1983, the complaint must "identify" the municipal "policy or custom" that resulted in the alleged violation of the plaintiff's rights. *Walker v. Prince George's Cty.*, 575 F.3d 426, 431 (4th Cir. 2009) (quoting *Bd. of Cty. Com'rs v. Brown*, 520 U.S. 397, 403 (1997)). A plaintiff may satisfy the municipal policy or custom requirement in one of four ways. The plaintiff may allege that the policy or custom arises "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Here, Plaintiff relies on the third theory to establish a § 1983 claim.

A failure to train claim will trigger municipal liability only where "the failure to train amounts to deliberate indifference to the rights' of those with whom municipal employees will come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[D]eliberate

indifference is a stringent standard of fault" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotations omitted). Deliberate indifference for purposes of failure to train can be shown in one of two ways. First, a plaintiff may point to "a pattern of similar constitutional violations" by employees to demonstrate deliberate indifference on the part of the policymakers. *Id.* at 62. Second, a municipality may be liable for a single, isolated incident where the need for training with respect to an officer's conduct was "plainly obvious." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (citing *Harris*, 489 U.S. at 390 n.10 (finding that only if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.")); *see also Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) ("[T]raining policy deficiencies for which municipal liability may be imposed include not only express authorizations of specific unconstitutional conduct, but tacit authorizations, and failures adequately to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.").

Additionally, the plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Harris*, 489 U.S. at 385. *See also Monell*, 436 U.S. at 694 (a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation."). Ultimately, municipal "liability may attach if officers are not adequately trained 'in relation to the tasks the particular officers must perform,' and this deficiency is 'closely related to the ultimate injury.'" *Lytle*, 326 F.3d at 473 (citing *Harris*, 489 U.S. at 390–91).

In their motion to dismiss, the Commission, Commissioners, and the Sheriff's Department argue that the Complaint fails to allege "a pattern of constitutional violations" or "describe an incident or a transgression" on their part that could rise to the level of deliberate indifference. (ECF No. 7 at 16.) The Court agrees that Plaintiff insufficiently pleads a § 1983 claim against these defendants.

As defendants contend, there is no question that Plaintiff does not allege a "pattern of similar constitutional violations from which a kind of 'tacit authorization' by city policymakers can be inferred." *Harris*, 489 U.S. at 397 (citations omitted). Further, the Complaint lacks factual allegations to suggest that merely shackling Plaintiff and placing him in a holding cell with unrestrained prisoners would inevitably increase risks of inmate-on-inmate violence. Plaintiff simply alleges that his constitutional rights were violated because these defendants failed to "promulgate, promote, implemented, formulated, and/or enforce policies, customs, and/or practices to protect the constitutional rights guaranteed to the Plaintiff" and that "the actions of [its] agents and employees represent the official policy of [the Commission] . . . ." (ECF No. 1 at 6, ¶¶ 21, 22.) However, the well-pleaded allegations do not identify a specific training deficiency "concerning a clear constitutional duty implicated in recurrent situations that a particular [officer] is certain to face." *Brown v. Mitchell*, 308 F.Supp.2d 682, 704 (E.D. Va. 2004) (citing *Harris*, 489 U.S. at 390). In other words, there are no facts alleged that suggest these defendants were on notice that its officers were in need of further training regarding their discretion to shackle inmates or that their conduct would make inmate attacks reasonably probable. *McDaniel*, 824 F.2d at 1390 ("the specific deficiency or deficiencies must be such as to make the specific violation 'almost bound to happen, sooner or later,' rather than merely 'likely to happen in the long run.'" (citing *Patzner v.*

12

*Bukett*, 779 F.2d 1363, 1367 (8th Cir. 1985))). According, Plaintiff's failure to train claim is inadequately plead and must be dismissed.

  *B. Section 1985 Claim*

  The introductory paragraph of the Complaint states that Plaintiff's claims are also brought pursuant to 42 U.S.C. § 1985 but does not indicate which subsection of § 1985 Plaintiff relies on to support his conspiracy claim. Although it is far from clear, it appears Plaintiff intended to allege a conspiracy claim under § 1985(3). *See Rhodes v. Smithers*, 939 F. Supp. 1256, 1271 (S.D. W. Va. 1995) (noting that § 1985(1) applies "only to conspiracies against officers of the United States or those about to take office"; § 1985(2) applies to access to courts; and, § 1985(3) "provides relief only when the conspiracy is designed to deprive a person of equal protection of the laws, or of equal privileges and immunities under the laws."). However, Plaintiff cannot state any plausible claim for relief under § 1985(3) because he has not alleged and cannot demonstrate that the defendants conspired to deny his right to equal protection of the laws grounded upon class-based protected status. *See* 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) (establishing that § 1983(3) requires the plaintiff to allege that he was a member of a protected class, that the defendants conspired to deprive him of his constitutional rights, that the defendants acted with class-based, invidiously discriminatory animus, and that he suffered damages as a result of the defendants' actions.). Accordingly, to the extent the Complaint attempts to assert a § 1985 conspiracy claim, Plaintiff's claim must fail. *See Rhodes*, 939 F. Supp. at 1271 (finding no basis for a conspiracy claim under § 1985(3) where there were "no allegations that the defendants were motivated by a class-based animus").

### C. State Law Claims

The remainder of Plaintiff's claims asserted in the Complaint are based on various state constitutional violations and West Virginia tort law. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims because Plaintiff failed to plead sufficient facts regarding his federal § 1983 and § 1985 claims to permit the Court "to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see* 28 U.S.C. § 1367(c)(3). *See also Aliff v. W. Va. Reg'l Jail and Corr. Facility Auth.*, 2016 WL 5419444 (S.D. W. Va. Sept. 26, 2016) (declining to exercise supplemental jurisdiction over state law claims where federal claims were dismissed); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and consideration of judicial economy.") Consequently, Plaintiff's state law claims are dismissed, and to the extent Plaintiff can cognizably plead the same, he can do so in state court.

### IV. CONCLUSION

For the reasons above, the Court **GRANTS** the defendants' Motions to Dismiss. (ECF Nos. 6, 8.) Further, the Court **DISMISSES** this case and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 21, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE